[No. 11586.   Department One.   April 25, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v.
ANDRO MARDESICH *et al.*, *Appellants*.[1]

CONSPIRACY—INFORMATION—SUFFICIENCY.   An information charging the defendants with conspiring together for the purpose of preventing any person or persons from fishing for herring in the open waters of Puget Sound, except such persons as might agree to join with them, and by threats, force and intimidation did prevent other persons from fishing and from the use of their property, charges a conspiracy under Rem. & Bal. Code, § 2382, subd. 5, making it unlawful to conspire to prevent another from exercising any lawful trade or calling or interfering with the use of property employed therein; and it was not necessary to name the persons conspired against, or to aver that they were citizens of the state and qualified to engage in the business of fishing.

CRIMINAL LAW—VENUE—CONSPIRACY.   Upon a conspiracy entered into in Jefferson county, to prevent others from engaging in fishing for herring in the open waters of Puget Sound within the boundaries of Jefferson, Island, and Whatcom counties, the venue may be properly laid in Whatcom county, where, after entering into the agreement, the defendants entered Whatcom county and there committed an overt act in pursuance of the conspiracy.

CONSPIRACY—OVERT ACTS.   A conspiracy to prevent others from engaging in fishing is complete when the agreement is made, and it is not necessary to prove an overt act.

CONSPIRACY—EVIDENCE—ADMISSIBILITY—OVERT ACTS.   Upon the charge of a conspiracy to prevent others from engaging in fishing, evidence that defendants, in pursuance thereof, prevented white men from fishing within the boundaries of an Indian reservation, is admissible as showing an overt act and that the conspiracy continued up to that time.

CONSPIRACY—OVERT ACTS—FORCE—THREATS.   Upon a charge of conspiracy to prevent others from engaging in fishing, overt acts in pursuance thereof need not be characterized by force, since such acts may be by threats, intimidation, or interfering or threatening to interfere with tools or property belonging to or used by another, under Rem. & Bal. Code, § 2382.

[1]Reported in 140 Pac. 573.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered May 27, 1912, upon a trial and conviction of conspiracy. Affirmed.

*S. M. Bruce*, for appellants.

*Frank W. Bixby* and *W. A. Martin*, for respondent.

MAIN, J.—The defendants were charged with the crime of conspiracy. The amended information, after designating the defendants by name, charged:

"Then and there being in Whatcom county, Washington, on or about the 14th day of April, 1912, the said defendants did then and there unlawfully and wilfully conspire, confederate and agree together that they would prevent any person or persons from fishing in the open waters of Puget Sound, except such person or persons as might agree to join with said defendants in said occupation, and in accordance with the terms of said agreement; and did then and there by threats, force and intimidation, and by interfering and threatening to interfere with the property of certain other persons then and there used for fishing in the open waters of Puget Sound, prevent certain other persons from fishing and from the use and employment of their property in said fishing, fishing in the open waters of Puget Sound then and there being a lawful occupation in which any person or persons had the right to engage in under the laws of the United States and the State of Washington. And so the prosecuting attorney as aforesaid, doth accuse the said Andro Mardesich, Jack Trudvich, John Naterlin, Steve Gusich, Nick Mardesich, V. Prettingiani, Tony Buratovish, Peter Covich, Nick Fiamengo, Lucas Carr, Dick Kenk, of the crime of conspiracy, all of which is contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Washington."

To this information, each of the defendants pleaded not guilty. The trial resulted in a conviction. Motion for new trial being made and overruled, the defendants appeal.

It is argued that the information charges no crime, in that it does not charge the appellants with intention to injure any person in particular, and does not aver the persons

whom the appellants sought to prevent from taking fish were citizens of the state of Washington, or qualified to engage in the business of fishing for a living. From a reading of the information, it appears, that the appellants were charged with unlawfully conspiring and confederating together for the purpose of preventing any person or persons from fishing for herring in the open waters of Puget Sound, except such person or persons as might agree to join with the appellants. It is further charged that the appellants, by threats, force and intimidation and by interfering and threatening to interfere with certain other persons, did prevent other persons from fishing and from the use and employment of their property therein.

The charge of conspiracy is founded upon Rem. & Bal. Code, § 2382 (P. C. 135 § 259), wherein it is provided:

"Whenever two or more persons shall conspire . . . (5) To prevent another from exercising any lawful trade or calling, or from doing any other lawful act, by force, threats or intimidation, or by interfering or threatening to interfere with any tools, implements or property belonging to or used by another, or with the use or employment thereof . . . Every such person shall be guilty of a gross misdemeanor."

By this statute, two or more persons are guilty of conspiracy when they agree or confederate together to prevent another from exercising any lawful trade or calling, or from doing any other lawful act by force or threats or intimidation, or by interfering or threatening to interfere with any tools, implements or property belonging to or used by another.

Section 2383 (P. C. 135 § 261), of the same act provides: "In any proceeding for (a) violation of section 2382 it shall (not) be necessary to prove that any overt act was done in pursuance of such unlawful conspiracy or combination." By this section, it should be noted, an overt act is not a necessary element of the crime.

The first objection to the information is that it does not allege any specific persons against whom the conspiracy was

directed. But it was not necessary to so allege. The rule is that, where a conspiracy is directed against a particular person, he should be designated in the indictment or information; but where the conspiracy is not directed against any particular person, it may be charged as an intended wrong against a class of persons, or the general public, without a more specific designation. 1 Wharton, Criminal Evidence (10th ed.), § 93; 8 Cyc. 664. In Cyc., at the volume and page mentioned, the rule is stated in this language:

"Where the conspiracy is directed against a particular person, or the object of the conspiracy has been effected so that the person or persons intended can be ascertained, he or they should be designated by name or the reason why such designation is not made should be stated; but where no intent as to any particular person was formed it should charge an intended wrong against some person, persons, or class of persons or the general public, without designating any particular individual."

Neither is the information faulty in that it fails to aver that the persons whom the appellants conspired to prevent from fishing had a lawful right to engage in that business. To so hold, would be to indulge the presumption that the appellants and those associated with them were the only persons who had a right to fish for herring in the open waters of Puget Sound. The mere statement of the proposition carries its own refutation. The information answers the requirements of the law in a charge of the crime of conspiracy.

The sufficiency of the evidence to sustain the charge of conspiracy is challenged. Much space in the brief of the appellants is devoted to this question. The record is long, and it would be impossible to epitomize herein the testimony. There was not only direct evidence of the formation of the conspiracy and of the connection of the appellants therewith, but there were facts and circumstances shown by the proof from which it might reasonably be inferred. There was sufficient evidence to sustain the conviction. The evidence on behalf of

the appellants would establish their innocence; but the question, under the conflicting evidence, was for the jury.

During the spring of the year 1912, at different times, there were engaged in fishing for herring within the boundaries of Jefferson, Island, and Whatcom counties, approximately one hundred and fifty men of Austrian birth, and certain Scandinavians. While within the jurisdiction of Jefferson county, they—that is, the Austrians and the Scandinavians—entered into a combination by which they were to fish together and divide the proceeds, the purpose being to control the sale price of the product. After this arrangement had been consummated, they agreed and confederated together that they would prevent any one from fishing for herring in the open waters of Puget Sound, unless such person or persons joined the combination. The Scandinavians being unwilling to participate in the means necessary to prevent others from fishing, withdrew from the combine. It was not the agreement to maintain the price of herring that constituted the conspiracy, but it was the understanding and agreement among them to prevent others from engaging in the business of fishing for herring.

The venue in the present case is laid in Whatcom county. In order to sustain this, one of two things is necessary: Either that the conspiracy was continued and brought into that county, or that an overt act in pursuance of it there took place. After the formation of the conspiracy and the withdrawal of the Scandinavians therefrom, the Austrians as well as the Scandinavians, went into Island county, and from there into Whatcom county, seeking the location where the fishing for herring was supposed to be the best. After the Scandinavians had withdrawn from the combine, they continued fishing. There is evidence that the conspiracy was continued by the Austrians in Whatcom county. There was also evidence of an overt act in pursuance thereof committed in that county. But it is claimed that, if any overt act were done, it was committed in preventing the Scandinavians from

fishing on the Lummi Indian Reservation, where neither they nor any other white man had a right to fish. This contention cannot be sustained. There is direct and positive evidence that the Austrians did interfere with an Indian there, whose rights to fish upon the reservation cannot be questioned.

Error is also sought to be predicated upon the refusal of the trial court to instruct the jury that the appellants could not be convicted for having hindered or interferred with any white man fishing on the reservation. In this, we think there was no error. The charge against the defendants was not that of hindering or interfering with any one in the taking of fish, but was the conspiring to prevent any one outside the combine from fishing. The offense is complete when the agreement or confederation constituting the conspiracy is formed. It is not necessary that an act in pursuance thereof be committed. In 1 Bishop, New Criminal Law, § 432, it is said:

"The mere conspiring of two or more persons to do a wrong is an adequate act of crime without any step taken in pursuance of the conspiracy."

The evidence showing interference of the appellants with the Scandinavians, even though it occurred upon the reservation, was admissible as showing an overt act. This overt act was not the crime, but only evidence that the conspiracy continued up to that time. In 8 Cyc. 687, the law is stated thus:

"The venue in an indictment for conspiracy may be laid in the county in which the agreement was entered into, or in any county in which an overt act was done by any of the conspirators in furtherance of the common design. If the conspiracy is entered into within the jurisdiction of the court, the parties thereto are triable in that jurisdiction, notwithstanding the offence was to be committed without the jurisdiction; and if a conspiracy is formed without the jurisdiction, an overt act committed by one of the conspirators within the jurisdiction is evidence of the crime within the jurisdiction where the overt act is committed."

The overt acts shown by the evidence were not characterized by force, but this was not necessary.   Such acts may be by threats, intimidation, or interfering, or threatening to interfere with any tools, implements or property belonging to or used by another.

Finding no error, the judgment will be affirmed. .

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur. '