[Nos. 59919-0; 60235-2. En Banc. March 10, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ROLAND
C. DENT, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS A.
BALCINDE, *Appellant*.

*Donna R. McNamara*, for petitioner.

*Andrew P. Stanton* of *Washington Appellate Defender Association*, for appellant.

*Seth R. Dawson, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

BRACHTENBACH, J. — Defendants Dent and Balcinde were charged with conspiracy to commit first degree murder. Both defendants were convicted at a joint trial. The two primary issues in this case were raised by both defendants. These issues are: (1) how the jury should be instructed as to the meaning of the "substantial step" element of a conspiracy, and (2) whether the trial court erred in refusing to instruct the jury that venue must be proved beyond a reasonable doubt. Balcinde raised three additional issues: (3) whether the State presented sufficient evidence of a "substantial step", (4) whether the trial court erred in admitting Dent's out-of-court statements against Balcinde, and (5) whether the trial court erred in denying Balcinde's motions for mandatory or discretionary severance. We hold that the trial court's instructions to the jury were proper, that the State presented sufficient evidence of a "substantial step", that the issue of use of Dent's out-of-court statements was not properly raised, and that the trial court properly denied severance. We, therefore, affirm the convictions.

Roland C. Dent and Carlos A. Balcinde were charged with conspiring to murder Dent's former girlfriend, Ann Powell. In late 1989 and early 1990, while on parole from an earlier conviction, Dent had a relationship with Powell. On February 22, 1990, Dent's parole was revoked based on an accusation made by Powell to Dent's parole officer that Dent had assaulted her. Following Powell's accusation, Dent was initially incarcerated in the King County Jail. Balcinde was also in the King County Jail at that time. It was during this time, when the codefendants were both in the King County Jail, that the conspiracy is alleged to have been formed. On February 23, 1990, Dent was transferred to the Shelton Corrections Center.

After his transfer, Dent contacted his then girlfriend, Joyful Tryon, to seek her help in communicating with Balcinde to advance the murder plan. Through numerous phone calls and letters, he asked her to (1) forward letters from Dent to Balcinde using a different or false return address; (2) give her handgun to Balcinde upon his release, after removing

the serial number and reporting it stolen; (3) set aside $300 to $400 to pay Balcinde; (4) pick Balcinde up from the King County Jail upon his release; (5) show Balcinde a videotape from which he could identify Powell; and (6) show Balcinde where Powell was then residing. In one telephone conversation, Tryon asked what the gun was for, and Dent told her that "it was gonna [*sic*] be used for Ann [Powell]." Verbatim Report of Proceedings, at 522-23. During the time between Dent's transfer to the Shelton facility and Balcinde's release, Tryon and her sons also received phone calls from Balcinde.

During the time Tryon was receiving communications from codefendants, her sons became concerned that Dent was trying to involve her in some type of illegal activity. After they persuaded her to tell them what was being planned, they went to the police. After meeting with the police, Tryon agreed to cooperate with the police. With Tryon's cooperation, the investigating officers recorded a call from Dent to Tryon on March 15, 1990, pursuant to an order authorizing intercept. During the conversation, Tryon asked Dent if it was necessary to go through with "[p]utting [Powell] in the ground". Verbatim Report of Proceedings, at 552-53. Defendant Dent answered "I cannot allow the [Parole] Board to have the argument that there's someone who's afraid of me, someone who thinks I'm a threat to. As far as they're concerned, I should never get out of prison under those conditions." Exhibit 13.

The police also had Tryon write a letter to Balcinde telling him that she would pick him up on March 19, 1990, when he was scheduled to be released. A deputy posing as Tryon was sent to meet Balcinde, and, pursuant to a second order authorizing intercept, the conversation between the deputy and Balcinde was recorded. In response to questions asked by the deputy, Balcinde stated that he was "going to do what you write me before", that Tryon was supposed to pay him $300, and that he was supposed to view a picture or videotape relating to a person named Ann. Verbatim Report of Proceedings, at 602. In addition, Balcinde asked

the deputy posing as Tryon whether she had been in contact with "RC".[1] Following this conversation, Balcinde entered the deputy's car and was placed under arrest as he reached for the money offered by the deputy.

On March 21, 1990, both defendants were charged by information, in Snohomish County, with conspiracy to commit first degree murder. Dent was also charged with solicitation of first degree murder. Prior to trial, Dent moved for a change of venue to King County. On April 11, this motion was granted. However, on reconsideration, when counsel for Balcinde indicated opposition to the change of venue, the pretrial judge determined that, in order to prevent severance, the trial should be returned to Snohomish County. At that time, the solicitation charge against Dent was dismissed without prejudice.

Prior to and during trial, Balcinde made repeated motions to have his trial severed from Dent's trial. One of Balcinde's motions was based on speedy trial grounds. The speedy trial problem arose because Dent's original counsel was allowed to withdraw on grounds of conflict of interest. Dent then waived his speedy trial rights for purposes of a request for continuance to allow his new counsel time to adequately prepare. Trial was originally set for May 8, 1990, which would have been within Balcinde's 60-day speedy trial period which expired on May 21, 1990. Following substitution of counsel for Dent, trial was continued until July 30, 1990. Balcinde's motion for severance was denied.

During trial numerous letters and other out-of-court statements of Dent and Tryon were admitted over hearsay objections by Balcinde. Exhibit 14 consisting of eight letters from Dent to Tryon was admitted. A portion of these consisted of Dent's instructions to Tryon on assisting Balcinde. Also admitted was exhibit 13, the tape of the telephone conversation between Dent and Tryon. Balcinde asked for an d was granted a limiting instruction as to portions of

---

[1]Defendant Dent's full name is Roland C. Dent.

exhibit 14 and portions of Tryon's testimony, as well as other evidence, most of which did not concern Balcinde. However, concerned both that the limiting instruction did not cover all the objectionable evidence and that, given the volume of evidence to which the limiting instruction was applicable (five complete exhibits, portions of a sixth exhibit, and portions of the testimony of eight witnesses), the limiting instruction would not adequately prevent prejudice from admission of the statements, Balcinde again moved for severance. The court again denied his motion for severance.

Prior to the giving of the jury instructions, codefendants objected to the jury instruction defining the "substantial step" element of a conspiracy. The court rejected the instruction proposed by both defendants which defined "substantial step" as "more than mere preparation". Balcinde's Clerk's Papers, at 41.

While the court was reading the instructions to the jury, Balcinde interrupted to "reserve an objection" to the "to convict" instruction. After the court completed the reading of the instructions, Balcinde explained that his objection was to the failure of the instruction to require proof of venue. At that time, Dent expressed his desire to join in Balcinde's objection. The court held that no change to the "to convict" instructions was required.

The jury found both defendants guilty of conspiracy to commit first degree murder. Dent appealed his conviction. The Court of Appeals found that the trial court's instructions to the jury were proper and upheld his conviction. *State v. Dent*, 67 Wn. App. 656, 840 P.2d 202 (1992). Dent's case is before this court on his petition for review of the Court of Appeals' decision. Balcinde's case was transferred to this court following certification by the Court of Appeals pursuant to RAP 4.3.

The first issue presented on review is whether the trial court properly refused to give defendant's proposed instruction which provided that the "substantial step" element of a

conspiracy requires "more than mere preparation". An individual commits conspiracy when

> with intent that conduct constituting a crime be performed, he [or she] agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a *substantial step* in pursuance of such agreement.

(Italics ours.) RCW 9A.28.040(1). The trial court instructed the jury that a "substantial step" is "conduct which strongly indicates a criminal purpose". Instruction 11. Dent's Clerk's Papers, at 1475.

Defendants' proposed instruction is identical to WPIC 100.05, which defines the "substantial step" element of an *attempt* as "conduct which strongly indicates a criminal purpose and which is more than mere preparation." WPIC 100.05. To support defendants' argument that the same definition of "substantial step" is applicable in the conspiracy context, the defendants rely on the note on use of WPIC 110.01, the pattern jury instruction defining criminal conspiracy, which refers to WPIC 100.05 for a definition of "substantial step". WPIC 110.01 note on use.

At oral argument, the State argued that WPIC 100.05 may not even accurately define "substantial step" for attempt purposes. That issue is not before us. Even if WPIC 100.05 does correctly define the "substantial step" element of an attempt, we are not persuaded by defendants' argument that the same definition should be used in the conspiracy context. Differences in the language and focus of our attempt and conspiracy statutes and in the purposes of statutes criminalizing attempt and conspiracy convince us that the instruction given by the trial court was proper.

The first difference between the two crimes is in the language describing the type of "substantial step" that is required for each. RCW 9A.28.020(1) provides:

> A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does *any act which is a substantial step toward the commission of that crime.*

(Italics ours.) In contrast, RCW 9A.28.040(1) provides:

> A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a *substantial step in pursuance of such agreement.*

(Italics ours.) The focus or end toward which a "substantial step" must be taken is described differently in each statute.

Additional differences between the two crimes can be found in the nature of the conduct sought to be prohibited and in the significance of the "substantial step" requirement (or overt act requirement in other jurisdictions), in each context, for determining whether the prohibited conduct has occurred. "In the case of attempt the act must go beyond preparation because the attempt is deemed a punishable segment of the crime intended." R. Perkins, *Criminal Law* 618 (2d ed. 1969), *quoted in Commonwealth v. Boone*, 286 Pa. Super. 384, 395 n.4, 428 A.2d 1382 (1981). A "substantial step" is required in the attempt context to prevent the imposition of punishment based on intent alone. *State v. Lewis*, 69 Wn.2d 120, 124, 417 P.2d 618 (1966).

The purpose of the "substantial step" or overt act requirement is different in the conspiracy context. A conspiracy has been defined as "a partnership in criminal purposes. The gist of the crime is the confederation or combination of minds." *State v. Casarez-Gastelum*, 48 Wn. App. 112, 116, 738 P.2d 303 (1987) (quoting *Marino v. United States*, 91 F.2d 691, 693-98, 113 A.L.R. 975 (9th Cir. 1937), *cert. denied*, 302 U.S. 764 (1938)). The purpose of the "substantial step" requirement is, therefore, to "manifest 'that the conspiracy is at work, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *Yates v. United States*, 354 U.S. 298, 334, 1 L. Ed. 2d 1356, 77 S. Ct. 1064 (1957) (quoting *Carlson v. United States*, 187 F.2d 366, 370 (10th Cir.), *cert. denied*, 341 U.S. 940 (1951)), *overruled on other grounds in Burks v. United States*, 437 U.S. 1, 2, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978).

The different purposes underlying the act requirements of the two offenses are well recognized.

> [C]onspiracy focuses on the additional dangers inherent in group activity. In theory, once an individual reaches an agreement with one or more persons to perform an unlawful act, it becomes more likely that the individual will feel a greater commitment to carry out his original intent, providing a heightened group danger.
>
> *As an inchoate crime, conspiracy allows law-enforcement officials to intervene at a stage far earlier than attempt does.* To obtain an attempt conviction, the prosecutor must prove that the actor performed an act beyond mere preparation . . . . To obtain a conspiracy conviction, however, the prosecutor need only prove that the conspirators agreed to undertake a criminal scheme or, at most, that they took an overt step in pursuance of the conspiracy. *Even an insignificant act may suffice.*

(Footnotes omitted. Italics ours.) Robbins, *Double Inchoate Crimes*, 26 Harv. J. on Legis. 1, 27-29 (1989). *See* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.5, at 95 (2d ed. 1986) (explaining that "[i]f the agreement has been established but the object has not been attained, virtually any act will satisfy the overt act requirement" of a conspiracy) (footnote omitted). Similarly, in distinguishing the crime of conspiracy from the crime of attempt, one court has explained that

> the essence of a conspiracy is the agreement to commit a crime. If an overt act is committed in furtherance of the conspiracy then, regardless of the act's importance to the overall scheme, there is no need to prove that the conspirators made a serious effort to carry out their agreement.

(Citation omitted.) *United States v. Jackson*, 435 F. Supp. 434, 439 n.4 (E.D.N.Y 1976), *aff'd*, 560 F.2d 112 (2d Cir.), *cert. denied*, 434 U.S. 941 (1977).

Other courts have implicitly recognized the distinction between the act requirements of the two crimes in discussing the type of acts which will support a conspiracy conviction. In Missouri, for an act to qualify as an overt act in furtherance of a conspiracy "there is no requirement that such act be a physical one or be a substantial step in the commission of the target offense." *State v. Madewell*, 846 S.W.2d 208, 209 (Mo. Ct. App. 1993). For example, "[a]

telephone conversation or even mere silence can be an overt act." *State v. Ray*, 768 S.W.2d 119, 121 (Mo. Ct. App. 1988). Other courts have held that telephone conversations and meetings during which planning is done are overt acts. *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir.) (holding that a telephone call to arrange a meeting to plan the conspiracy was a sufficient overt act), *cert. denied*, 459 U.S. 976 (1982); *United States v. Civella*, 648 F.2d 1167, 1174 (8th Cir.) (holding that "[t]elephone conversations and meetings in which plans and arrangements are made in furtherance of the conspiracy are overt acts"), *cert. denied*, 454 U.S. 867 (1981); *United States v. Marable*, 574 F.2d 224, 230 (5th Cir. 1978) (holding that the overt act requirement was met where the defendant, through phone conversations and meetings, participated in discussing and arranging the conspiracy). An attempt to collect compensation under the agreement might also serve as the necessary overt act for a conspiracy. *United States v. Helmich*, 704 F.2d 547, 549 (11th Cir.), *cert. denied*, 464 U.S. 939 (1983).

■ We agree that the conspiracy statute requires a lesser act than does the attempt statute. We are particularly persuaded by the fact that RCW 9A.28.040 requires only an act that is a "substantial step in pursuance of [the] agreement" as opposed to a "substantial step toward the commission of [the] crime". RCW 9A.28.020. We hold that preparatory conduct which furthers the ability of the conspirators to carry out the agreement can be "a substantial step in pursuance of [the] agreement". Therefore, we hold that the trial court properly refused to instruct the jury that the "substantial step" element of a conspiracy requires more than mere preparation.

The second issue on review is based on defendants' assignment of error to the failure to give requested instructions regarding venue and to the instructions given which mentioned venue.

■ The State argues that the defendants did not timely except to the venue instruction. If defendants did not timely except at trial, their challenge is raised for the first time on

appeal. An objection to a jury instruction cannot be raised for the first time on appeal unless the instructional error is of constitutional magnitude. *State v. Fowler*, 114 Wn.2d 59, 69, 785 P.2d 808 (1990). Because, as discussed below, we hold that venue is not an element of the crime, the instructional error alleged here is not of constitutional magnitude. *Fowler*, at 69 (holding that "the constitution only requires the jury be instructed as to each element of the offense charged").

We agree that the objection to the trial court's failure to include venue as an element of the "to convict" instruction was not timely. We also note that Balcinde's brief fails to set out his requested instruction. Also, the briefs do not reference the place in the record concerning the untimely exceptions. These omissions violate RAP 10.3(a)(4) and (g).

■ Even though the exceptions were not timely and there are deficiencies in the briefs, we are reviewing the venue question to clarify our case law. Our review is solely for future guidance; the indicated deficiencies justify that we not consider the issue at all. Compliance with the RAP remains mandatory.

First, we consider whether the exceptions were timely. During the instruction conference, defendants did not mention venue. No exception was taken to the instruction proposed to be given by the court nor was exception taken to the failure to give the requested "to convict" instruction which included a requirement that the State prove venue in Snohomish County beyond a reasonable doubt.

During the reading of the instructions, and prior to the reading of the "to convict" instructions, Balcinde's counsel interrupted the court and "reserved [an] objection" to the "to convict" instructions. Verbatim Report of Proceedings (Aug. 8, 1990), at 818. Dent's attorney made no comment at that time. Only after the jury was instructed, closing arguments given, and the case submitted to the jury did Balcinde's counsel except to the venue instruction; Dent's attorney then joined in the exception. Verbatim Report of Proceedings (Aug. 9, 1990), at 883, 888.

█ It is hard to imagine a less timely exception. CR 51(f) is perfectly clear as to the procedure to take exceptions. It is elementary that timely exceptions, *before* the reading of the instructions to the jury, are necessary to permit the court to correct any error which may exist so that the jury is instructed correctly. *Nelson v. Mueller*, 85 Wn.2d 234, 238, 533 P.2d 383 (1975).

█ The next question is whether proof of venue is an element of the crime which must be proved beyond a reasonable doubt. It is not. This court has made that clear: "Such proof [of venue] is not an element of the crime, but is a matter of venue in determining the proper forum before which a defendant may be tried." *State v. Hardamon*, 29 Wn.2d 182, 188, 186 P.2d 634 (1947); *see also State v. Johnson*, 45 Wn. App. 794, 796, 727 P.2d 693 (1986), *review denied*, 107 Wn.2d 1035 (1987). In *State v. Marino*, 100 Wn.2d 719, 727, 674 P.2d 171 (1984), there is a statement that "Washington appears to have adopted the position that although venue must be proved as an 'element' of the charge, proof beyond a reasonable doubt is not necessary." That statement is erroneous to the extent that it suggests that venue is an element of the crime. It is correct that venue need not be proved beyond a reasonable doubt.

Direct evidence of venue is not required. "[I]nferences from circumstantial evidence may establish proper venue." *State v. Marino, supra* at 728. Indeed the court may take judicial notice of proper venue and not submit the question to the jury. *State v. Dennison*, 72 Wn.2d 842, 844, 435 P.2d 526 (1967); *State v. McCorkell*, 63 Wn. App. 798, 800, 822 P.2d 795, *review denied*, 119 Wn.2d 1004 (1992).

The whole venue issue arises from article 1, section 22 of the state constitution, which provides that the defendant has a right "to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed . . .".

The defendant may waive the right to challenge venue. *State v. Hardamon, supra* at 188. The essential question is what actions or inactions of the defendant constitute waiver?

In other words, what must the defendant do to preserve a challenge to venue? *State v. McCorkell, supra* at 801 states:

> We hold that a criminal defendant waives any challenge to venue by failing to present it by the time jeopardy attaches. Jeopardy attaches in a jury trial when the jury is sworn and in a bench trial when the court begins to hear evidence.

We agree, in general principle, with that holding, but refinement is required. The facts of a particular case may call for different rules.

CrR 5.1(b) is the starting point for one possible scenario. It provides for the situation where there is reasonable doubt whether the offense has been committed in one of two or more counties. The right of a defendant to change to the other county is strictly time limited. CrR 5.1(c).

Absent facts which require application of CrR 5.1, the defendant is required to raise the venue question at the omnibus hearing. CrR 4.5 is specific: "Failure to raise or give notice at the hearing of any error or issue of which the party concerned has knowledge may constitute waiver of such error or issue." CrR 4.5(d). There is no reason why this principle should not apply to a challenge to venue. Unless the defendant makes a showing of good cause for not raising the issue at the omnibus hearing, failure to do so constitutes a waiver. Although the record does not reflect whether the venue issue was raised at the omnibus hearing, at least as to Dent, waiver probably did not occur here because of Dent's pretrial motions for a change of venue to King County.

We recognize that evidence introduced during the trial may raise a question of venue for the first time. In such event, the defendant must raise the issue at the end of the State's case. If a defendant demonstrates a lack of any proof, the court should permit reopening, unless the defendant makes a showing of actual prejudice.

If the evidence reveals a genuine issue of fact about venue, it becomes a matter for resolution by the trier of fact. If it is a jury case, it will be a jury question. The instruction should require proof by a preponderance of the evidence, not beyond a reasonable doubt. We note some confusion from

the Washington Pattern Jury Instructions which include venue in the "to convict" instruction requiring proof beyond a reasonable doubt. WPIC 4.21. Despite the form of the instruction, the official comment states that venue need not be proved beyond a reasonable doubt and is waived if not challenged during the course of the trial. WPIC 4.21 comment. *See State v. Brown*, 29 Wn. App. 11, 14, 627 P.2d 132 (1981).

▪ To negate any issue in these cases about competency of counsel regarding the venue issue, we hold that venue was properly laid in Snohomish County. The court's instructions required proof of venue within the state of Washington. We need not decide if that was a proper instruction because the venue of Snohomish County was proper and proved. On a charge of conspiracy, venue is proper in any county where an overt act in furtherance of the conspiracy took place. *State v. Mardesich*, 79 Wash. 204, 208, 140 P. 573 (1914). At trial Tryon testified that she resided in Snohomish County and that she received calls from both defendants and letters from Dent at her residence. Verbatim Report of Proceedings (Aug. 6, 1990), at 469, 475, 522; Verbatim Report of Proceedings (Aug. 7, 1990), at 574. Her testimony reflects that through the calls and letters, Dent gave her instructions for assisting Balcinde. Verbatim Report of Proceedings (Aug. 6, 1990), at 471-72, 485, 488-89, 493, 495-96, 503-04. Dent's phone calls to Tryon, during which instructions were communicated, were sufficient acts in Snohomish County to support venue there. *See United States v. Lewis*, 676 F.2d 508, 511 (11th Cir.) (holding that a telephone call from a county in Florida to a county in Texas to arrange a meeting to plan the conspiracy was a sufficient overt act in both counties), *cert. denied*, 459 U.S. 976 (1982).

▪ Turning to the issues raised only by Balcinde, the first of these is the sufficiency of the evidence presented by the State to show that a "substantial step" in pursuance of the conspiracy had been taken. Sufficient evidence of an element has been presented where, viewing the evidence in the light most favorable to the prosecution, "any rational

trier of fact could have found the element of the crime established beyond a reasonable doubt." *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992). Based on our holding that the "substantial step" element of a conspiracy encompasses preparatory conduct, we find that sufficient evidence of a "substantial step" was presented in this case. Looking solely at evidence the admissibility of which is unchallenged by Balcinde, it shows that Balcinde engaged in preparatory conduct by meeting with a person he believed to be Tryon, referring to communication with a person he called "RC", discussing viewing a picture or video of "Ann", and discussing the amount of money he was to receive from Tryon. Because we hold below that Dent's out-of-court statements were properly admitted, we also consider evidence from Dent's statements that he asked Tryon to assist him in communicating with Balcinde, to prepare a weapon to give to Balcinde, to show Balcinde a video of Ann Powell, and to pay Balcinde $300 to $400. Thus, because the steps taken by each defendant furthered the ability of Balcinde to accomplish the agreement, the State adequately demonstrated that a "substantial step in pursuance of [the] agreement" had been taken. RCW 9A.28.040.

The second issue raised solely by Balcinde is whether the rules against the use of hearsay were violated by the trial court's admission of Dent's out-of-court statements against Balcinde. Before we can consider the merits of this issue, we must consider whether Balcinde properly presented this hearsay challenge for review. RAP 10.3(a)(3) requires a brief of an appellant to contain "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The effect of failure to comply with this requirement is explained in RAP 10.3(g): "The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto."

The alleged error should be described with sufficient specificity for the appellate court to identify the precise

issue being raised. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990). However, an issue set out in an improper assignment of error may be considered if "the manner in which the claimed errors are set forth and described in the brief is adequate to understand what has been asserted as error." *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 336, 798 P.2d 1155 (1990). Here, the assignment of error and the issues presented relating to the hearsay issue do not specify which evidence was allegedly admitted in violation of the rules against the use of hearsay. The issues do refer to "Dent's out-of-court statements", but still do not specify which of these statements were not covered by a hearsay exception. The issue is not properly raised.

The final issue raised by Balcinde is whether mandatory or discretionary severance should have been granted in this case. Balcinde's first argument is that mandatory severance was required because of the admission of Dent's statements against him. CrR 4.4(c)(1) provides:

> A defendant's motion for severance on the ground that an out-of-court statement of a codefendant referring to him is inadmissible against him shall be granted unless:
>
> (i) the prosecuting attorney elects not to offer the statement in the case in chief;
>
> (ii) deletion of all references to the moving defendant will eliminate any prejudice to him from the admission of the statement.

If the out-of-court statements of the codefendant are admissible against the moving defendant, severance is not required. *State v. Mitchell*, 117 Wn.2d 521, 528, 817 P.2d 398 (1991); CrR 4.4(c)(1). The prosecution did offer Dent's statements in its case in chief and no deletions were made. However, because we hold that this issue WAS NOT properly raised, the trial court's ruling is not challenged properly and must stand.

Balcinde next argues that the trial court should have granted discretionary severance (1) because it was necessary to preserve Balcinde's right to a speedy trial, (2) because incriminating out-of-court statements made by

Dent were admitted against him, or (3) because of the large quantity of evidence that was covered by a limiting instruction in Balcinde's favor. The rule on discretionary severance provides:

The court . . . should grant a severance of defendants whenever:

(i) if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial . . . or

(ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

CrR 4.4(c)(2). A trial court's denial of a motion for severance will not be reversed "absent a manifest abuse of discretion". (Footnote omitted.) *Mitchell*, at 532. Separate trials are not favored in this state. *State v. Grisby*, 97 Wn.2d 493, 506, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983).

■ As to the speedy trial argument, the parties agreed that Balcinde's speedy trial period ended on May 21, 1990. Verbatim Report of Proceedings (May 11, 1990), at 10. Trial did not begin until July 30, 1990. In this case the continuance was granted to allow adequate preparation time for new counsel who took over Dent's case after his original counsel was allowed to withdraw due to a conflict of interest. In a case involving similar circumstances, the Court of Appeals stated: "Severance is not mandatory even where a defendant's speedy trial rights are at issue." *State v. Melton*, 63 Wn. App. 63, 67, 817 P.2d 413 (1991) (upholding a continuance extending 7 days beyond one codefendant's speedy trial period), *review denied*, 118 Wn.2d 1016 (1992). In *Melton*, no abuse of discretion was found where the trial court relied on "the State's policy favoring joint trials" and where no prejudice in presenting a defense was alleged. *Melton*, at 66-67.

Although the delay of slightly over 2 months here was longer than the delay in *Melton*, Balcinde has not alleged that the delay caused him any prejudice in presenting his defense. In addition, interests of judicial efficiency underlying the policy favoring joint trials supported the trial court's denial of a severance. A separate trial would have burdened

the court, jurors, and witnesses. As in *Melton*, the trial court properly exercised its discretion in weighing these interests and denying severance.

 As to the admission of Dent's statements against Balcinde, the fact that these statements were admissible under the rules concerning the use of hearsay defeats Balcinde's argument for discretionary severance. The use of admissible evidence does not interfere with a "fair determination of the guilt or innocence of a defendant." CrR 4.4(c)(2). Balcinde's argument for unfairness is based on his inability to cross-examine Dent, but the inability to cross-examine a declarant is inherent in the use of hearsay. We decline to hold that severance is necessary every time the State uses out-of-court statements of a codefendant that are admissible under evidence rules governing the use of hearsay.

Balcinde argues, however, that this court has concluded that separate trials are required where an out-of-court statement by a codefendant that directly or indirectly incriminates his fellow defendant is admitted and the moving defendant does not have the opportunity to cross-examine the codefendant. Balcinde relies upon *State v. Mitchell, supra* at 532-33 (quoting *State v. Grisby, supra* at 503 (quoting *State v. Ferguson*, 3 Wn. App. 898, 906, 479 P.2d 114 (1970), *review denied*, 78 Wn.2d 996 (1971))). In *Mitchell*, the admission of incriminating out-of-court statements by a codefendant was held to require a *discretionary* severance, even though mandatory severance under CrR 4.4(c)(1) had been held inappropriate on the grounds that the challenged statements were admissible against the moving defendant.

Our reasoning in *Mitchell* was founded on *State v. Ferguson, supra*. Upon further reflection, we conclude that our reliance on *Ferguson* was not sound, and we now overrule that portion of *Mitchell*. The legally significant portion of the quoted statement from *Ferguson* is that severance is "required only [where] an out-of-court statement . . . *incriminates* . . . ." *Ferguson*, at 906. The holding in *Ferguson* was that severance

was *not* required because the challenged statements did not incriminate the moving defendant. *Ferguson* was decided prior to the adoption of CrR 4.4 in 1973, *see Grisby*, at 506. Therefore, *Ferguson* did not interpret any portion of CrR 4.4. Instead, at issue in *Ferguson* was the scope of the federal severance rule under *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). *Bruton* involved the admission at a joint trial of an out-of-court statement by one defendant that was *not* admissible against the complaining defendant. This is exactly the circumstance now governed by CrR 4.4(c)(1). Therefore, the reasoning from *Ferguson*, relied on in *Mitchell*, has no relevance to discretionary severance under CrR 4.4(c)(2).

 As to the issue concerning the limiting instruction given by the court, Balcinde argues that it was unreasonable to expect that the jury would be able to follow the limiting instruction as it applied to part or all of six exhibits and the testimony of eight witnesses. As a general rule, "[j]urors are presumed to follow instructions." *Grisby*, at 509. The United States Supreme Court has recognized that this rule has limits:

> It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless : . . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

(Citations omitted.) *Bruton v. United States*, *supra* at 135-36.

Bruton involved the admission of a confession which expressly incriminated both defendants. *Bruton*, at 124. The limiting instruction in this case does not apply to the type of "powerfully incriminating" statements involved in *Bruton*. The limiting instruction in this case was applicable to exhibits 3A, 3B, 4, 5, portions of 14, and 18; to the entire

testimony of five witnesses; and to portions of the testimony of three other witnesses, including Tryon (given May 8, 1990) and her son. Except for the testimony of Tryon and her son, none of the testimony repeated any extrajudicial statements of Dent's. To the extent Tryon's testimony on May 8, 1990, did refer to statements of Dent's, it was repetitive of her earlier testimony which was not subject to the limiting instruction. The statements repeated by Tryon's son were instructions to refer to Balcinde as "amigo" and to forward Dent's letter's to Balcinde with a different return address. These statements do not directly inculpate Balcinde in any criminal activity and are not "powerfully incriminating".

Turning to the exhibits, exhibit 18 is a letter from Tryon to Dent that does not refer to Balcinde and does not repeat any statements of Dent's. Exhibits 3A, 3B, and 4 are written by Dent, but contain no reference to Balcinde. The same is true with the portions of exhibit 14 to which the limiting instruction applies. Exhibit 5 cannot be dismissed as easily. Exhibit 5 is a letter to the public defender's office, which contains a note Dent asked to have passed on to Balcinde. However, it is not a confession, nor does it inculpate Balcinde in criminal conduct. Instead Dent is telling Balcinde that Tryon will probably implicate Balcinde, but that Dent will testify that Balcinde is innocent of any wrongdoing. The most incriminating statements of Dent's were admitted against Balcinde and are the subject of separate claims for severance discussed above. None of the testimony or exhibits listed in the limiting instruction contain the type of "powerfully incriminating extrajudicial statements of a codefendant", *Bruton*, at 135-36, that would render a limiting instruction ineffective and make severance appropriate. Therefore, the trial court properly exercised its discretion in denying Balcinde's request for a severance on this basis.

The trial court committed no error in instructing the jury, in admitting out-of-court statements by Dent, or in denying

Balcinde's motions for severance. Defendants' convictions are affirmed.

ANDERSEN, C.J., and UTTER, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied May 31, 1994.