FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 21

STATE OF WASHINGTON
BY_____
        DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43154-8-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| WAYNE ALAN HOUSER, | |
| Appellant. | |

BJORGEN, J. — Wayne Alan Houser appeals his convictions for attempted unlawful manufacture of a controlled substance and conspiracy to manufacture a controlled substance by claiming that the State presented insufficient evidence to convict him because it failed to show he took the first step in methamphetamine synthesis. We reject Houser's contention and hold that the State presented sufficient evidence at trial to allow the jury to determine that Houser took a substantial step toward the manufacture of methamphetamine. We therefore affirm Houser's convictions.

No. 43154-8-II

FACTS AND PROCEDURAL HISTORY

On July 15, 2010, around 2:00 a.m., law enforcement officers responded to an armed home burglary call in Spanaway, Washington. While approaching the scene in his police vehicle, one of the responding officers, Deputy Jonathon Collins, noticed two men "hunkered down" in the back of a truck bed on a property adjacent to 22nd Avenue. Verbatim Report of Proceedings (VRP) (Feb. 13, 2012) at 43. Because the men were within the radius the burglars could have reached after fleeing the scene on foot, Collins decided to investigate. Collins stopped his vehicle and illuminated the men with his vehicle's spotlight. When Collins got out of his vehicle to speak with the men, they jumped out of the truck and ran.

Collins leaped over the property's low fence to pursue the men. Once on the property, Collins noticed a small structure with two vehicles parked nearby, the truck and a Chevy Tahoe. As Collins approached the vehicles, Houser appeared and aggressively challenged Collins's right to be on his property. Houser was extremely agitated and Collins had difficulty communicating with him. Only when a second deputy appeared on the scene as backup did Houser calm down enough for Collins to make clear that the officers would not leave the property without identifying the two men because of their possible connection to the burglary. At this point, the two men, Mark Mangan and Joshua Isaacson, emerged from the small structure.

As Collins moved toward Mangan and Isaacson, he passed the truck. In the truck's bed, in plain view, he saw a hot plate and several duffel bags. Collins became concerned because his experience taught him that hot plates were frequently used for the manufacture of methamphetamine.

A third deputy, Michael Phipps, arrived on the scene around this time. As Phipps, a member of the department's clandestine lab response team, passed the truck bed, he noticed a "strong" chemical odor. VRP (Feb. 13, 2012) at 123. Phipps determined that it came from a bag in the truck's bed, although he did not open the bag. Phipps noticed that one of the other bags had ice crystals forming on it and some kind of gas emanating from it. He found the ice crystals surprising, since it was July and the temperature was moderate.

As Phipps continued past the truck, he discovered a fourth man, Roy Smith, hiding in its passenger compartment. Phipps ordered Smith out of the truck and discovered lithium batteries, another telltale marker of methamphetamine production, where Smith had lain across the seat. The officers arrested all four men and impounded both the Tahoe and the truck.

The truck belonged to Houser. Police personnel performing an inventory search of the vehicle discovered the hot plate; ammonia sulfate; drain cleaner; a bag that had contained dry ice; acetone; a scale; plastic baggies containing methamphetamine residue; an apparatus used to generate hydrogen chloride gas; and receipts for the purchase of ammonia sulfate, dry ice, and drain cleaner. The manufacture of methamphetamine involves the materials and equipment found in the Houser's truck.

The State charged Houser with attempted manufacture of a controlled substance in violation of RCW 69.50.401(1)(2)(b) and RCW 9A.28.020, conspiracy to manufacture a controlled substance in violation of RCW 69.50.401(1)(2)(b) and RCW 69.50.407, attempted unlawful possession of ammonia with intent to manufacture methamphetamine in violation of RCW 69.50.407 and RCW 69.50.440(1), and conspiracy to unlawfully possess ammonia with

intent to manufacture methamphetamine in violation of RCW 69.50.407.[1,2,3] The State initially charged Smith, Isaacson, and Mangan as co-defendants, but they each pleaded guilty and agreed to testify against Houser.

At trial, Mangan and Smith testified that they had manufactured methamphetamine in the late 1990s and early 2000s before breaking their addictions to the drug. However, both Mangan and Smith had resumed using methamphetamine just prior to their arrests on Houser's property. Mangan and Smith were disappointed with the potency of the available supply of methamphetamine and they decided to begin manufacturing the drug to have access to more potent methamphetamine. However, Mangan and Smith faced difficulties in obtaining the materials necessary to manufacture methamphetamine, including anhydrous ammonia, because the legislature had acted to curtail methamphetamine production during their break from use.

---

[1] RCW 69.50.401 provides, in relevant part, that:
    (1) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
    (2) Any person who violates this section with respect to:
. . .
    (b) Amphetamine, including its salts, isomers, and salts of isomers, or methamphetamine, including its salts, isomers, and salts of isomers, is guilty of a class B felony.

[2] RCW 69.50.407 provides that "[a]ny person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[3] RCW 69.50.440 provides, in relevant part that:
    (1) It is unlawful for any person to possess ephedrine or any of its salts or isomers or salts of isomers, pseudoephedrine or any of its salts or isomers or salts of isomers, pressurized ammonia gas, or pressurized ammonia gas solution with intent to manufacture methamphetamine, including its salts, isomers, and salts of isomers.
    (2) Any person who violates this section is guilty of a class B felony.

Smith told Mangan he knew someone, Houser, who could make anhydrous ammonia. Mangan purchased the materials Houser required to make the anhydrous ammonia, and Mangan and Smith took these materials, along with chemicals and equipment necessary to produce methamphetamine, to Houser's property the night of their arrest.

At times, Smith and Mangan told the jury that they went to Houser's house solely to make anhydrous ammonia. However, both also told the jury that they went to Houser's to make the anhydrous ammonia for the sole purpose of producing methamphetamine.

The jury returned a verdict of guilty on all counts. Houser timely appeals only his convictions for attempted unlawful manufacture of a controlled substance and conspiracy to manufacture a controlled substance.

## ANALYSIS

Due process requires that the State prove every element of a charged offense beyond a reasonable doubt. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). We review claims that the State presented insufficient evidence to meet this burden of proof by looking to "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1980). Any appellant challenging the sufficiency of the State's evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence." *State v. Caton*, 174 Wn.2d 239, 241, 273 P.3d 980 (2012). Further, "[w]e defer to the trier of fact's resolution of conflicting testimony, evaluation of

witness credibility, and decisions regarding the persuasiveness of evidence." *State v. Curtiss*, 161 Wn. App. 673, 693, 250 P.3d 496, *review denied*, 172 Wn.2d 1012, 259 P.3d 1109 (2011).

A.      The State presented sufficient evidence that Houser or his accomplices took a substantial step toward the unlawful manufacture of a controlled substance

Houser first argues that we must reverse his conviction for the unlawful attempted manufacture of a controlled substance because the State presented insufficient evidence that he took a substantial step toward the manufacture of methamphetamine as required for a conviction for a criminal attempt. Specifically, he claims that the State failed to show that he had extracted pseudoephedrine, which several witnesses testified was the first step in any synthesis of methamphetamine. However, because Houser had made significant progress towards the manufacture of methamphetamine, we hold that he had taken a substantial step toward the commission of unlawful manufacture of a controlled substance and affirm his conviction.

The legislature codified the mens rea and actus reus elements of the crime of attempt in RCW 9A.28.020(1), which provides that "[a] person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." The law requires a substantial step towards the commission of the completed crime to ensure that the State does not punish an individual for criminal intent alone. *State v. Dent*, 123 Wn.2d 467, 475, 869 P.2d 392 (1994). Instead, the act constituting the substantial step serves as the proscribed conduct which the State punishes. *Dent*, 123 Wn.2d at 475.

While the legislature provided no definition of a substantial step, the Model Penal Code (MPC) has done so, and our Supreme Court has adopted the MPC's definition of the term. *State*

6

*v. Smith*, 115 Wn.2d 775, 782, 801 P.2d 975 (1990) (citing *State v. Workman*, 90 Wn.2d 443, 452, 584 P.2d 382 (1978)). Under the MPC, conduct "'strongly corroborative of the actor's criminal purpose'" constitutes a substantial step toward the commission of the offense. *Smith*, 115 Wn.2d at 782 (quoting *Workman*, 90 Wn.2d at 451). The MPC provides a list of conduct, which, "'if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law'" to sustain an attempt conviction; our Supreme Court has also adopted this list. *Workman*, 90 Wn.2d at 451-52 n.2 (quoting MPC § 5.01(1)(c) (Proposed Official Draft, 1962)). The MPC's list of conduct sufficient to sustain an attempt conviction was drafted for the express purpose of drawing a line separating a criminal attempt from mere preparation. MPC § 5.01, at 297 (expl. note). Included within this list of conduct sufficient to sustain an attempt conviction is "'possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances.'" *Workman*, 90 Wn.2d at 451-52 n.2 (quoting MPC § 5.01(2)).

The substantial step formulation of a criminal attempt used by the MPC "broaden[s] the scope of attempt liability" beyond what the common law allowed. MPC § 5.01, at 329 cmt. 6(a). Rather than focusing on what the actor still needs to accomplish in order to complete the crime, the substantial step analysis focuses on what the actor has already done. *See generally* MPC § 5.01, at 321-54 cmts. 4, 5, 6. This focus contrasts with common law attempt doctrines like the indispensible element test and physical or dangerous proximity tests, which look to whether the defendant has everything necessary to commit the crime, or whether the defendant has come close to completing the offense. MPC § 5.01, at 321-54 cmts. 4, 5, 6. The premise of the MPC "is that one who engages in such purposive conduct is sufficiently dangerous to justify state

intervention even if she is not yet close to consummation of the offense." Joshua Dressler, UNDERSTANDING CRIMINAL LAW § 27.09B, at 443 (4th ed. 2006).

Here, there is "sufficient evidence to support a logical and reasonable deduction that a substantial step" to the production of methamphetamine had occurred. *Smith*, 115 Wn.2d at 782. Mangan, Smith, and Houser met at Houser's property with plans to produce anhydrous ammonia that they planned to then use to manufacture methamphetamine.[4] Houser possessed all the materials necessary to make liquefied anhydrous ammonia: the ammonium sulfate fertilizer and drain cleaner necessary for synthesizing the compound and the dry ice necessary to condense the anhydrous ammonia into the liquid form required for the production of methamphetamine. While anhydrous ammonia has legitimate uses, it also has legitimate sources, although these legitimate purchases are tracked. A person reasonably needs to clandestinely manufacture anhydrous ammonia only if he or she plans to use the substance to produce methamphetamine. Houser's possession of the materials needed to produce anhydrous ammonia served no lawful purposes under these circumstances and constituted an act strongly corroborative of his intent to unlawfully manufacture methamphetamine.[5] Under *Smith*, Houser's possession of the materials

---

[4] Houser's briefing cites a portion of the record where Smith claims that he and Mangan had no plans to make methamphetamine and merely wanted to see how to make anhydrous ammonia. His briefing fails to reference the portions of Smith's testimony where Smith explicitly stated that they wanted to make methamphetamine using the anhydrous ammonia. The jury heard all the testimony and apparently determined Smith's statement that he and his accomplices did not plan on making methamphetamine was not credible, especially in light of the evidence seized during the arrest. We defer to such determinations.

[5] We do not suggest that the mere possession of the materials needed to make anhydrous ammonia without more is a crime. We hold instead that possession of these materials under the circumstances of this case is strongly corroborative of Houser's intent to unlawfully manufacture methamphetamine.

needed to make anhydrous ammonia allowed the jury to determine Houser had taken a substantial step in the production of methamphetamine.

The State also introduced evidence of Houser's other efforts to make methamphetamine. The search of Houser's truck turned up the filters necessary for extracting the pseudoephedrine from cold medicine, the lithium batteries necessary to catalyze the conversion of pseudoephedrine into methamphetamine base, the acetone necessary to extract the methamphetamine base from the water containing the spent lithium catalyst, and the hydrochloric acid gas bubbler used to crystallize the methamphetamine base into its salt form. While anhydrous ammonia, lithium batteries, and even exotic equipment like a hydrochloric acid bubbler all have legitimate uses, courts have affirmed methamphetamine manufacturing convictions based on similar collections of materials. *See, e.g., State v. McPherson*, 111 Wn. App. 747, 758, 46 P.3d 284 (2002) (describing as "unusual" a combination of materials and precursor chemicals similar to the one at issue here, although including pseudoephedrine, and holding that the combination was sufficient to support a conviction for unlawful manufacturing of methamphetamine). Again, under *Smith*, Houser's possession of all these materials, collected in one place, is "strongly corroborative" of an intent to produce methamphetamine and suffices to sustain his conviction for attempted unlawful manufacture of methamphetamine. *Smith*, 115 Wn.2d at 782.

Further, Houser's claim that the State needed to present evidence that he had taken the first step in the production of methamphetamine misreads the statute. RCW 9A.28.020 requires the defendant to take a substantial step toward the completion of the crime, not to the completion of any particular stage of the crime. Any act that strongly corroborates the defendant's criminal

intent serves as the actus reus of a criminal attempt, no matter where in the process of the commission of the completed criminal act it occurs. *See State v. Brockob*, 159 Wn.2d 311, 339, 150 P.3d 59 (2006) ("[T]he State is correct that [the defendant] need not have begun the manufacturing process to be convicted of attempted manufacture of methamphetamine. He need only have taken some step toward that process."). Even if Houser could not complete the synthesis of methamphetamine due to a lack of pseudoephedrine, he had successfully accumulated most of the materials and equipment to complete the synthesis and appears to have been arrested just before beginning production of anhydrous ammonia.[6] Once Houser successfully obtained pseudoephedrine, the steps he had already taken to accomplish the synthesis of methamphetamine would allow him to easily manufacture the drug. Under these facts, the State presented sufficient evidence that Houser had taken a substantial step towards the completion of the manufacture of methamphetamine.

Houser also contends that the State only introduced evidence of preparation to manufacture methamphetamine, which is insufficient to establish an attempt to manufacture the drug. As discussed above, the State presented evidence that Houser possessed most of the materials and equipment necessary to manufacture methamphetamine. This conduct fell within the MPC's list of conduct sufficient to sustain an attempt conviction, a list adopted by our Supreme Court in *Workman*. The MPC specifically presented this list to distinguish mere

---

[6] As the State argued in closing, the materials assembled suggest that Houser had obtained some pseudoephedrine and intended to drive his truck to that supply. Some of the equipment or materials, such as the filters, acetone, and hydrochloric gas bubbler have no application in the synthesis of anhydrous ammonia, but do have a role in the synthesis of methamphetamine. The jury could reasonably infer that Houser would have these materials with the materials for making anhydrous ammonia only if he intended to take the next step and manufacture methamphetamine. Thus the jury could reasonably infer that Houser had access to pseudoephedrine.

preparatory conduct from a substantial step toward the completion of an offense. MPC § 5.01, at 297 ("Subsection (2) elaborates on the preparation-attempt problem by indicating what is meant by the concept of a substantial step."). Under the MPC, by showing Houser's possession of these materials under these circumstances, the State demonstrated that Houser had progressed beyond mere preparation.

Further, the facts of this case show that Houser had progressed beyond preparation. Houser's truck contained all the materials necessary for the production of anhydrous ammonia, a necessary component of the manufacture of methamphetamine. It also contained most of the precursor chemicals and equipment necessary to produce finished methamphetamine, including the hydrochloric acid gas bubbler, solvents, and filters. The condition of the materials in the back of the truck, especially the fact that the dry ice was exposed to open air, suggests that Collins and the other officers arrested Houser and his accomplices just before they began synthesizing anhydrous ammonia. The jury could reasonably conclude that Houser's attempt to manufacture methamphetamine had progressed beyond mere preparation.

B.    The State presented sufficient evidence that Houser or a co-conspirator took a substantial step in pursuance of the agreement to manufacture methamphetamine

Houser also challenges his conviction for conspiracy to manufacture a controlled substance on similar grounds. Houser seems to contend that, because the State presented insufficient evidence to show a substantial step within the context of a criminal attempt, it also presented insufficient evidence to show a substantial step within the meaning of a criminal conspiracy.

11

Washington's Supreme Court has explicitly rejected Houser's conflation of the meaning of a substantial step within the contexts of a criminal attempt and a criminal conspiracy. *Dent*, 123 Wn.2d at 474-77. To prove a criminal conspiracy, the State must show the existence of an agreement and a substantial step in pursuance of that agreement. RCW 9A.28.040(1); *Dent*, 123 Wn.2d at 475. However, the substantial step in the conspiracy context merely serves to demonstrate an active agreement; it does not, as with an attempt, corroborate criminal intent. *Dent*, 123 Wn.2d at 475. Based on this difference in purpose, the Supreme Court has held that "the conspiracy statute requires a lesser act than does the attempt statute." *Dent*, 123 Wn.2d at 477. Thus, "preparatory conduct which furthers the ability of the conspirators to carry out the agreement can be 'a substantial step in pursuance of [the] agreement.'" *Dent*, 123 Wn.2d at 477 (quoting RCW 9A.28.040) (alteration in original).

As discussed above, Houser possessed most of the materials and equipment necessary to manufacture methamphetamine. Houser's assembly of the materials found in his truck furthered his and his co-conspirators' ability to manufacture methamphetamine. Under *Dent*, this preparation constituted a substantial step in pursuance of the agreement to manufacture methamphetamine.

## CONCLUSION

We hold that sufficient evidence supports the jury's verdict and affirm Houser's convictions for attempted unlawful manufacture of a controlled substance and conspiracy to

No. 43154-8-II

manufacture a controlled substance.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

MELNICK, J.

JOHANSON, A.C.J.

13