FILED
COURT OF APPEALS
DIVISION II

2015 APR 21 AM 9: 00

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44884-0-II |
| Respondent, | |
| v. | |
| ANDREW JOSEPH STEARMAN, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Andrew Stearman appeals his convictions for unlawful possession of a firearm and possession of a stolen firearm. He argues that the trial court abused its discretion by (1) denying his motion to change venue, and (2) refusing to consider his renewed motion to change venue at the close of evidence. We reverse the convictions because the trial court abused its discretion by refusing to consider Stearman's renewed motion to change venue and because this error was not harmless. We dismiss the convictions without prejudice to the State's right to refile, in the appropriate venue, the charges of unlawful possession of a firearm and unlawful possession of a stolen firearm.

## FACTS

Three burglars stole 41 operable firearms from a sporting goods store in Fife. The firearms made their way to Tacoma, then to West Seattle. One of the burglars, Soeun Sun, was acquainted with Stearman. Stearman lived in a single-family residence with his brother in King County. Several days after the burglary, the burglars sent a photo in a text message to Stearman showing multiple firearms displayed on a bed. Subsequently, Sun and another burglar, David

Bunta, brought about 10 firearms in a duffel bag to Stearman's house. At this time, Sun owed Stearman about $400. Sun left the duffel bag of firearms at Stearman's house. The firearms remained at Stearman's house for a time, during which people purchased some of the guns directly from Sun.

Police initiated an investigation into the burglary and its aftermath. After several months, the investigation led police to Stearman. Police arrested him in West Seattle and brought him to Fife for questioning.

During the interrogation, Stearman maintained that he neither bought nor sold the firearms Sun brought to his house. He claimed he liked one of them in particular and accepted it as payment for the $400 debt Sun owed him, but he denied knowing of or participating in the trafficking of stolen firearms from his residence. He claimed that he learned of the burglary and its connection to the firearms at his house later, when he saw a news video and recognized the burglars. Stearman admitted to exchanging text messages with Sun shortly after the burglary, including receiving a photograph of the guns. But the interrogation included no discussion of any phone calls.

The State charged Stearman in Pierce County with first degree trafficking in stolen property as an accomplice,[1] and possession of a stolen firearm as an accomplice.[2] Both of these charges bore aggravators for their connection to criminal street gang activity. The trafficking charge reflected the State's contention that Stearman allowed the guns to remain at his house and

---

[1] RCW 9A.82.050(1).

[2] RCW 9A.56.140(1); 9A.56.310(1).

2

assisted in their sale. The declaration of probable cause stated that one of the burglars' phones contained text messages from Stearman referencing weapons, and that Stearman was friends on social media with one of the burglars. It also stated that Stearman lived at an address described by one of the purchasers of firearms, suggesting that trafficking occurred at Stearman's residence. It further stated that Sun's cell phone records showed that the phone "pinged" off of a tower near Stearman's house 11 days after the burglary, corroborating the allegation that the burglars were physically at Stearman's residence.[3] Clerk's Papers at 6. Finally, the declaration of probable cause summarized Stearman's interrogation, saying that he admitted the burglars brought a duffel bag of firearms to his house after the burglary. It said Stearman owed Sun $400 and that he accepted one of the guns as payment.

Before the jury was empanelled, Stearman moved to change venue from Pierce County to King County. Stearman argued that "none of his alleged crimes occurred in whole or even in part in Pierce County. Further, even if there was a reasonable doubt as to where these crimes occurred, [Stearman] has the sole discretion to pick his court of venue and wishes his case to be heard in King County." CP at 10.

In response to the motion to change venue, the State amended Stearman's information to add one count of conspiracy to traffic in stolen property in the first degree. The State based this count on the allegation that "those responsible for the burglary phoned [Stearman] from Pierce

---

[3] The declaration of probable cause discusses Sun's phone's "ping" near Stearman's house. The police report, which the State attached to its brief in opposition to the motion to change venue, avers that Bunta's phone "pinged" at Stearman's house. Thus, this cell phone evidence showed only that the two burglars were near Stearman's house, and did not show that the burglars were in contact with Stearman from Pierce County.

County and during the phone conversations there was an agreement that the burglars would bring the stolen firearms to [Stearman] and sell the firearms."[4] CP at 28-29. There was no factual support for these phone conversations in the declaration of probable cause or the police report.

At a hearing on Stearman's motion to change venue, the trial court considered both the initial charges and the proposed conspiracy charge. The court heard argument from Stearman and the State describing the relevant facts. Stearman argued to the court that the probable cause statement showed that Stearman's actions clearly took place in King County. He averred that, based on his review of the discovery, none of the alleged acts occurred in Pierce County.

The State informed the court that it had discovered that the burglars contacted Stearman by a telephone call made from Pierce County to King County shortly after the burglary. The State alleged that after this phone call, the burglars proceeded to Stearman's residence in King County to sell the weapons to Stearman. The State characterized this phone conversation as an agreement forming the basis of a conspiracy, and argued that the burglars' trip to King County was an overt act in furtherance of the conspiracy to traffic firearms. Thus, the State argued that the evidence showed an agreement to traffic the firearms formed in Pierce County.

The court denied the motion to change venue, based on the original trafficking and possession of a stolen firearm charges, as well as on the proposed conspiracy count. It found that the State had charged Stearman with trafficking under two theories: (1) organizing, planning, financing, directing, managing, or supervising the theft of property for sale to others and (2) knowingly trafficking in stolen property. It also found that, supporting the possession of stolen firearms count, "[t]he theft of the firearms clearly occurred in Pierce County. The fact they were

---

[4] Conspiracy is proscribed by RCW 9A.28.040.

stolen firearms was generated because of actions that occurred in Pierce County. [Stearman was] charged in Count II with possession of stolen firearms. The firearms were allegedly stolen because of actions that occurred in Pierce County." Verbatim Report of Proceedings (VRP) (Jul. 10, 2012) at 15. The trial court ruled that there was no reasonable doubt that at least part of each offense charged occurred in Pierce County.

Thereafter, the State amended Stearman's information, adding one count of first degree conspiracy to commit trafficking.[5] The amended information also charged Stearman as a principal, not an accomplice, to both trafficking and possession of a stolen firearm. Several months later, the State again amended the information, adding one count of second degree unlawful possession of a firearm, based on a previous felony conviction.

After these pretrial motions, Stearman's case was transferred to a different judge in Pierce County. At trial, the State's evidence consisted principally of Stearman's April 11, 2012 videotaped interrogation. The State offered no evidence regarding the existence or substance of the telephone call from Pierce County. At the close of evidence, Stearman moved to dismiss the conspiracy and trafficking counts for insufficient evidence. He argued that the evidence merely established Stearman's presence at the house while the firearms were there, and it did not demonstrate that Stearman had the intent to assist in trafficking them. The trial court granted Stearman's motion to dismiss the conspiracy charge, but it denied his motion to dismiss the trafficking charge.

---

[5] RCW 9A.28.040 (conspiracy); RCW 9A.82.050 (trafficking).

No. 44884-0-II

After the trial court dismissed the conspiracy charge, Stearman attempted to renew his motion to change venue. He told the trial court that the earlier motion before a different judge had been denied due to the judge's ruling that sufficient evidence existed to show that a portion of Stearman's crimes occurred in Pierce County. He argued that the State had not produced any evidence at trial that demonstrated that the trafficking occurred in Pierce County. The prosecutor urged the trial court not to consider venue, saying: "That decision was already made by another judge before trial, and certainly after the evidence and the State's close, is not exactly timely." VRP (Apr. 3, 2013) at 148. The trial court refused to consider this motion, stating only: "[I]t's part of the record that the motion was denied . . . so, you know, assuming there is an appeal from this case, that's part of the record; and we know cases are sometimes reversed based on pretrial motions." VRP (Apr. 3, 2013) at 148.

The jury found Stearman not guilty of first degree trafficking in stolen property, but found him guilty of possession of a stolen firearm and unlawful possession of a firearm. Stearman appeals.

ANALYSIS

Stearman argues that the trial court abused its discretion by failing to grant his timely motion to change venue before trial. Stearman also argues that the trial court abused its discretion by refusing to address his renewed motion to change venue after the close of the State's evidence. The State concedes that the trial court erred by not entertaining the renewed motion, but it argues that the error was harmless. We hold that the trial court did not abuse its discretion when it denied Stearman's initial motion to change venue. But we hold that the trial

6

court did abuse its discretion by refusing to consider Stearman's renewed motion to change venue and that this error was not harmless.

A.     *Standard of Review*

We review a trial court's ruling on a motion to change venue for an abuse of discretion. *State v. Jackson*, 150 Wn.2d 251, 269, 76 P.3d 217 (2003). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Jackson*, 111 Wn. App. 660, 669, 46 P.3d 257 (2002). A trial court abuses its discretion when it fails to exercise its discretion, such as when it fails to make a necessary decision. *State v. Flieger*, 91 Wn. App. 236, 242, 955 P.2d 872 (1998). We review questions of law, such as statutory interpretation, de novo. *State v. Rockl*, 130 Wn. App. 293, 297, 122 P.3d 759 (2005).

B.     *Denial of Pretrial Motion*

Stearman argues that the trial court abused its discretion by denying his pretrial motion to change venue. We disagree.

As an initial matter, we note that the trial court based its venue decision, in part, on the State's verbal offer of proof. Washington law does not establish the procedure the trial court must employ before trial in evaluating the facts to determine whether venue is proper. But neither party contests the trial court's ability to rely on an offer of proof in its consideration of the facts relevant to venue. And in other criminal contexts, a trial court may rely on the State's offer of proof to resolve preliminary matters. For example, the trial court may rely on the State's offer of proof to establish the relevance and admissibility of evidence. *State v. Kilgore*, 147 Wn.2d 288, 295, 53 P.3d 974 (2002); ER 103(a)(2). Thus, we hold that a trial court may rely on

the State's offer of proof of facts in its determination whether an element of each offense occurred in the subject county under CrR 5.1(a).

Article I, section 22 of the Washington Constitution provides criminal defendants the right to a speedy and public trial by an impartial jury "of the county in which the offense is charged to have been committed." Additionally, CrR 5.1 applies to venue decisions. CrR 5.1(a) provides that an action shall be commenced either "(1) In the county where the offense was committed," or "(2) In any county wherein an element of the offense was committed or occurred." CrR 5.1(a). And where there is reasonable doubt whether an offense has been committed in one of two or more counties, the action may be commenced in any of the relevant counties. CrR 5.1(b).

But CrR 5.1(c) provides that if a case is filed under CrR 5.1(b) and there is reasonable doubt about where the offense occurred, the defendant "shall have the right to change venue to any other county in which the offense may have been committed." *See also Rockl*, 130 Wn. App. at 298. Put another way, the defendant's right to change venue under CrR 5.1(b) and (c) arises only when a case is filed in one county but there is reasonable doubt as to whether the crime actually occurred there. *Rockl*, 130 Wn. App. at 296.

"Conspiracy" is acting with "intent that conduct constituting a crime be performed" and agreeing "with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040. "On a charge of conspiracy, venue is proper in any county where an overt act in furtherance of the conspiracy took place." *State v. Dent*, 123 Wn.2d 467, 481, 869 P.2d 392 (1994) (citing *State v. Mardesich*, 79 Wash. 204, 208, 140 P. 573 (1914)). In reviewing whether an overt act

8

giving rise to proper venue occurred in a county, we look to the sufficiency of the evidence that such an act took place in that county. *Dent*, 123 Wn.2d at 481.

At the time of the pretrial motion to change venue, the trial court heard argument from both Stearman and the State describing the evidence. In addition, the State gave an offer of proof that the burglars, while still in Pierce County, called Stearman. The State submitted the police report. The court file also contained the declaration of probable cause and the information. Thus, the trial court had the following allegations before it: Stearman was in contact with the burglars, possibly shortly after the burglary. The burglars called Stearman from Pierce County. They came to his residence with a duffel bag full of firearms. One of the burglars owed Stearman money, and Stearman accepted one of the firearms as payment for the debt. The firearms remained at Stearman's residence for some time, and some of them were sold from his residence.

We hold that the trial court did not abuse its discretion by denying Stearman's pretrial motion to change venue. The trial court had tenable grounds for finding that, beyond a reasonable doubt, at least some elements of Stearman's offenses occurred in Pierce County. The trial court concluded that this action had been filed under CrR 5.1(a), not 5.1(b); in other words, the trial court found that there was no reasonable doubt whether some element of each offense occurred in Pierce County, and therefore, Stearman did not have the right under CrR 5.1(c) to change venue.

The court found that elements of the trafficking offense had occurred in Pierce County.[6] The State's offer of proof that Stearman was in contact with the burglars during a phone call made from Pierce County after the burglary, during which call the State alleged that Stearman agreed with the burglars to buy or sell the weapons, was circumstantial evidence that Stearman organized, planned, or otherwise committed elements of first degree trafficking in Pierce County. Therefore, regarding the trafficking count, the trial court had tenable grounds and reasons to find beyond a reasonable doubt that Stearman committed at least some elements of trafficking in Pierce County.

The trial court also found that elements of the conspiracy offense had occurred in Pierce County. At the hearing, the State informed the court that it had cell phone records demonstrating that the burglars called Stearman shortly after the burglary before coming to his residence with the firearms. The State argued that these facts would show both an agreement formed partly in Pierce County, and an overt act in Pierce County (of driving towards Stearman's residence with the firearms), forming proper venue in Pierce County. On a charge of conspiracy, the trial court looks to the sufficiency of the evidence that an overt act occurred in the subject county for

---

[6] First degree trafficking can be proven in one of two ways: (1) knowingly initiating, organizing, planning, financing, directing, managing, or supervising the theft of property for sale to others, or (2) knowingly trafficking in stolen property. RCW 9A.82.050. "Trafficking" as proscribed by part (2) means "to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19). The State charged Stearman under both prongs. Thus, if Stearman had knowingly organized, planned, financed, directed, managed, or supervised the theft of property in Pierce County, then some elements of first degree trafficking would have occurred in Pierce County even if Stearman never physically left King County.

purpose of venue. *Dent*, 123 Wn.2d at 481. Here, the act of driving in Pierce County towards Stearman's residence was an overt act in furtherance of the conspiracy to traffic, and the driving took place in Pierce County. Thus, the trial court had tenable grounds and reasons to find that some elements of conspiracy occurred in Pierce County. The trial court did not abuse its discretion by finding that some of the elements of conspiracy as charged occurred in Pierce County because the State made an offer of proof that both the agreement and an overt act occurred in Pierce County.[7]

Because, at the time this motion was heard, the trial court had tenable grounds and reasons to find that Stearman committed some of the elements of the conspiracy and trafficking offenses in Pierce County, it did not abuse its discretion by denying Stearman's pretrial motion to change venue.

C.    *Refusal To Reconsider Objection to Venue*

Stearman argues and the State concedes that the trial court abused its discretion by refusing to entertain Stearman's renewed motion to change venue at the close of the State's evidence, when the trial court had dismissed the conspiracy charge. We accept the State's concession that the trial court abused its discretion, because the trial court must allow the defendant to raise a venue issue at the close of the State's case when evidence at trial raises a question of venue. *See Dent*, 123 Wn.2d at 480. But the State argues that this error was

---

[7] The trial court also ruled that there was no reasonable doubt that the possession of stolen firearm count occurred in Pierce County. The trial court misapplied the law here. The elements of possession of a stolen firearm are possessing, carrying, delivering, selling, or being in control of a stolen firearm. RCW 9A.56.310(1). The State did not allege that Stearman possessed any of the stolen firearms in Pierce County. But the trial court analyzed this problem by considering that the *theft* of the firearms occurred in Pierce County.

11

harmless because Stearman waived the issue by failing to provide a jury instruction on venue. We consider waiver and harmless error separately, and hold that Stearman did not waive the venue challenge and that the error was not harmless.[8]

    1. *Trial Court Abused its Discretion by Failing To Reconsider Venue*

In *Dent*, our Supreme Court, in dicta, contemplated that the State should be allowed to reopen its case in chief when evidence during trial brought a venue issue to light for the first time. 123 Wn.2d at 480. When there is a fair question of fact as to where a crime occurred, venue becomes an issue for the jury to resolve by a preponderance of the evidence. 123 Wn.2d at 480. No case addresses the question of what a trial court must do when a defendant renews an objection to venue at the close of evidence when evidence, or lack of evidence, brings the venue issue to light. And no case addresses the question whether the trial court should reconsider venue when the State has failed to prove necessary facts that it promised in its offer of proof before trial.

Here, the State failed to produce any evidence that any of Stearman's acts occurred in Pierce County. Before trial, the State made an offer of proof that Stearman made or received a phone call from Pierce County shortly after the burglary, during which he agreed with the burglars to traffic firearms from his residence. The State did not present any such evidence at trial. The evidence established only that Stearman exchanged text messages with the burglars; there was no evidence of the location of the burglars during these exchanges.

---

[8] Stearman also argues that the trial court erred by allowing the State to amend the information adding a charge of conspiracy "in order to defeat the motion for change of venue." Br. of Appellant at 12. Because we reverse Stearman's conviction on the grounds that Pierce County was an improper venue, we do not reach this argument.

The trial court abused its discretion here by refusing to consider the venue issue because it made its decision for untenable reasons. Instead of considering the merits of Stearman's renewed venue motion, the trial court did not allow Stearman to reopen the issue, remarking: "[I]t's part of the record that the motion [to change venue] was denied . . . so, you know, assuming there is an appeal from this case, that's part of the record; and we know cases are sometimes reversed based on pretrial motions." VRP (Apr. 3, 2013) at 148. Thus, the trial court treated the issue as closed. A trial court abuses its discretion if its decision is untenable or based on untenable grounds or reasons. And a trial court abuses its discretion when it fails to exercise its discretion. *Flieger*, 91 Wn. App. at 242. The trial court's failure to exercise its discretion here was an abuse of discretion. Faced with a substantive issue about venue, the trial court declined to consider the objection and instead referred generally to the defendant's right to raise the issue on appeal. Thus, the trial court's refusal to consider Stearman's renewed motion was not based on tenable grounds or reasons.

2. *Error Not Harmless*

The State argues that the trial court's erroneous failure to entertain Stearman's renewed motion to change venue was harmless because Stearman "failed to provide the court with the proper remedy for improper venue, and therefore waived the issue" under *Dent*. Br. of Resp't at 20. The State also argues that the error was harmless because the trial court would have denied Stearman's renewed motion to change venue had it considered the issue. We consider waiver and harmless error separately. We hold that Stearman did not waive his challenge to venue and that this error was not harmless.

13

a. *No Waiver*

Venue in the proper county is a constitutional right. *Dent*, 123 Wn.2d at 479. The remedy for constitutional error is a new trial unless the error was harmless beyond a reasonable doubt. *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). Procedural error regarding venue is harmless constitutional error when any reasonable jury would have found that the offense occurred in the county where it was tried. *State v. McCorkell*, 63 Wn. App. 798, 801, 822 P.2d 795 (1992).

The State argues that, under *Dent*, the appropriate remedy for improper venue at the close of evidence is for the defendant to submit a jury instruction on venue. It argues that if the defendant does not provide such an instruction, the venue error is harmless because the defendant failed to provide the appropriate remedy, thus waiving the challenge.[9] In *Dent*, the court held that, where evidence introduced during trial raises a venue question for the first time,

> the defendant must raise the issue at the end of the State's case. If a defendant demonstrates a lack of any proof, the court should permit reopening, unless the defendant makes a showing of actual prejudice.
>
> If the evidence reveals a genuine issue of fact about venue, it becomes a matter for resolution by the trier of fact. If it is a jury case, it will be a jury question. The instruction should require proof by a preponderance of the evidence, not beyond a reasonable doubt.

123 Wn.2d at 480.

---

[9] We note that, when Stearman renewed his objection to venue, the prosecutor argued that the trial court should not consider the issue: "That decision was already made by another judge before trial, and certainly after the evidence and the State's close, is not exactly timely." VRP (Apr. 3, 2013) at 148. The State's argument on appeal that Stearman waived the issue by not presenting a jury instruction fails to take into consideration that the State argued to the trial court that the issue was closed.

14

In arguing that the error here was harmless because Stearman did not provide a jury instruction, the State misreads *Dent* and conflates the separate issues of waiver and harmless constitutional error. *Dent* requires the trial court to submit the venue issue to the jury for resolution by a preponderance standard if it agrees that the defendant has raised a genuine issue of fact about venue at the close of evidence. 123 Wn.2d at 480. It does not specify that the defendant must provide a jury instruction simultaneously, or else waives his challenge. Nor does *Dent* discuss the trial court's obligation where the State has entirely failed to prove venue.

b. *Error Not Harmless*

Venue before a jury of the proper county is a constitutional right. *McCorkell*, 63 Wn. App. at 800. Procedural error regarding venue may be harmless where evidence at trial is such that any reasonable jury would have found proper venue if it considered the question. *McCorkell*, 63 Wn. App. at 801. In other words, where the facts at trial clearly establish that venue was proper, a venue error may be harmless, because the defendant in fact was tried before a jury of the proper county. In such cases, any jury would have found that venue was proper if the question were put to them because sufficient facts existed at trial to support venue. But where *no* reasonable jury could have found that venue was proper by a preponderance of the evidence because *no* facts at trial established venue, this error cannot be harmless. That is, if we held that constitutional error about venue were harmless even where *no* facts supported venue in the county where trial occurred, the constitutional right to venue would lose all force. Venue error would be harmless in every case, because we presume that juries follow instructions. *See State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). And such a holding would relieve the

state of its burden to prove venue even where the defendant timely challenges venue and where the State presents no facts establishing venue.

Here, because the trial court dismissed the conspiracy charge, the jury considered only whether Stearman committed trafficking, unlawful possession of a stolen firearm, and unlawful possession of a stolen firearm. The State did not allege that Stearman ever possessed a firearm in Pierce County, and there was no evidence suggesting he did. Thus, the only crime for which the jury could have found that an element occurred in Pierce County was trafficking. But, as described above, no evidence supported venue in Pierce County, so no reasonable jury could have found that Stearman committed his offenses in Pierce County by a preponderance standard. Thus, this error is not harmless.

The State also appears to argue that the error was harmless because, had the trial court considered the motion substantively, it would have reached the conclusion that venue was proper in Pierce County because the reasons cited by the judge who denied Stearman's pretrial motion to change venue were still applicable. We reject this argument because, as discussed above, the State failed to substantiate its offers of proof about Stearman's actions in Pierce County. Had the trial court considered the merits of Stearman's renewed objection, it would have granted Stearman relief. The trial court would not have looked forward at the State's offers of proof, but would instead have looked back at the State's failure to produce evidence during the trial itself. Thus, had the trial court entertained Stearman's renewed motion, it would have come to the conclusion that there was reasonable doubt where Stearman's offenses occurred, and thus that they fell under CrR 5.1(b). Stearman would have had the right to change venue under CrR 5.1(c). These facts further support our conclusion that this error was not harmless.

16

Therefore, we hold that the trial court erred by refusing to entertain Stearman's renewed motion to change venue at the close of the State's evidence and after dismissing the conspiracy charge. This error violated Stearman's constitutional right to venue in the proper county, and it was not harmless. Thus, we reverse the convictions and dismiss without prejudice to the State's right to refile, in the appropriate venue, the charges of unlawful possession of a firearm and unlawful possession of a stolen firearm.

Worswick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.