**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54352-4-II |
| Respondent, | (consolidated with) |
| v. | |
| JOHN THOMAS BLACK, | |
| Appellant. | |
| In the Matter of the Personal Restraint of | No. 55237-0-II |
| JOHN THOMAS BLACK, | |
| Petitioner. | UNPUBLISHED OPINION |

GLASGOW, J.—John Thomas Black's wife caught him having intercourse with his 16-year-old stepdaughter, LDR, in February 2019 in Grays Harbor County. LDR told her mother that Black had been sexually abusing her since at least 2013, when the family lived in Snohomish County. The State charged Black in Grays Harbor County with two sets of offenses—four charges arising from Black's conduct in Grays Harbor County and four charges arising from conduct in Snohomish County. The trial court denied Black's motion to sever and change venue for the Snohomish County offenses.

After a bench trial, Black was convicted of one count of first degree rape of a child, one count of first degree child molestation, one count of third degree rape of a child, one count of third

degree child molestation, two counts of first degree incest, and two counts of second degree incest, with four of these counts occurring entirely in Snohomish County.

Black appealed and filed a personal restraint petition (PRP). Black argues the trial court improperly denied his motion to sever and change venue on the four Snohomish County counts. He also contends the trial court improperly imposed a community custody condition prohibiting use of the Internet, as well as community custody supervision fees. The State concedes the four Snohomish County counts should be reversed and the community custody condition should be stricken. Black filed a statement of additional grounds for review (SAG). In his PRP, Black raises multiple arguments, including that he received ineffective assistance of counsel and there was insufficient evidence to convict him.

We reverse the four convictions that were based on conduct that occurred in Snohomish County (counts 1, 2, 5, and 7) and remand for the trial court to dismiss those convictions without prejudice and resentence Black accordingly. Upon resentencing, the trial court must strike the Internet use prohibition and may revisit the community custody supervision fee. We otherwise affirm. We deny Black's PRP.

FACTS

A.    Background

LDR was 6 years old when her mother, Keisha Rowe, began dating Black. Rowe and Black married roughly a year later. The family moved from Colorado to Lynnwood in Snohomish County, Washington in 2013 when LDR was about 10 years old. Around that time, Black began having sexual contact with LDR, eventually engaging in intercourse with her. The abuse occurred

2

"a couple of times a week" for the next 6 years. Verbatim Report of Proceedings (VRP) (Dec. 19, 2019) at 70.

The family moved from Lynnwood to California in 2014, then to Colorado in 2016, then to Ocean Shores in Grays Harbor County, Washington in 2017. In February 2019, Rowe walked in on Black having intercourse with then-16-year-old LDR. LDR told her mother that Black had been abusing her for several years. Rowe called the police, and Black was arrested.

B.     Pretrial

The State initially charged Black with first, second, and third degree rape of a child; first, second, and third degree child molestation; and two counts of first degree incest. The information alleged that all the offenses were committed in Grays Harbor County. After receiving notice that some of the alleged acts occurred entirely in Snohomish County, the State amended the information in April 2019 to charge first degree rape of a child (count 1), first degree child molestation (count 2), third degree rape of a child (count 3), third degree child molestation (count 4), two counts of first degree incest (counts 5 and 6), and two counts of second degree incest (counts 7 and 8), alleging the offenses were committed in the state of Washington. Counts 1, 2, 5, and 7 were alleged to have occurred between January 2013 and October 2014, when the family lived in Lynnwood. Counts 3 and 4 were for abuse of LDR that occurred between when the family moved to Ocean Shores and LDR's 16th birthday. Counts 6 and 8 were for conduct in the time between the move to Ocean Shores and the day Black was arrested.

Black sent Judge David Edwards several letters asking for a change of venue—two in April 2019 and a third in May 2019—that Black framed as a pro se motion to dismiss for lack of jurisdiction and venue. Black identified counts 1, 2, 5, and 7 as those that were not charged in the

correct venue. The trial court sent copies of these pleadings to both counsel and did not take further action.

Black's first attorney sought to discourage him from raising the venue issue because severance would allow Snohomish County to charge him for the crimes committed there and, if convicted, his sentence would run consecutively to whatever sentence Black would receive in Grays Harbor County if found guilty.

Black's first attorney withdrew in September 2019 due to a conflict of interest. Black's second attorney filed a motion to sever and change venue for counts 1, 2, 5, and 7 because the State acknowledged that those offenses occurred in Snohomish County. At a pretrial hearing, the trial court ruled that a consolidated trial would not cause undue prejudice and denied Black's motion. Black then waived his right to a jury trial.

C.      Trial and Reconsideration

At the bench trial, Black argued LDR and Rowe were lying about the abuse because Black was about to divorce Rowe and she would lose his "Section 8" housing voucher if they divorced, but not if he was incarcerated while still married. *Id.* at 14-15. Black asserted that he was guilty only of second degree incest for the sexual contact of the February 2019 incident. LDR testified Black began to sexually abuse her in Colorado when she was approximately 10 years old, continuing when the family moved to Lynnwood in 2013. She testified that the sexual contact included Black putting his hands on her genitals and that penile-vaginal intercourse began when she was 10 years old. She testified the abuse occurred "a couple of times a week" from when she was 10 until she was 16, and she did not report the abuse because she was afraid of Black. *Id.* at

4

70. She testified that Black would write her notes about the sexual contact and one of these notes was admitted as evidence.

LDR and Rowe both testified about the events of the day that Black was arrested. Rowe testified that Black had slept on the couch the night before and that she observed him pass her bedroom door to enter the kitchen area, then later she went into the kitchen. She found him there having intercourse with LDR. LDR testified that she was walking back to her room after using the restroom in the morning, when Black stopped her and told her "to get naked" and have intercourse with him. *Id.* at 77. LDR testified that shortly thereafter Rowe walked into the kitchen area and saw Black having sexual intercourse with LDR.

The trial court also admitted four letters into evidence. Black sent the letters to Rowe's address shortly before the trial—the letters were addressed to Black's daughter, who had never lived at that address and had not shared any address with the family for six years. The four letters arrived in the course of eight days. The letters asserted that Black still loved Rowe and hoped she would not appear or testify against him on grounds of spousal immunity. Rowe gave the letters to the police and testified that they were in Black's handwriting.

Sergeant David McManus collected LDR's rape kit from the hospital for transport to the crime laboratory and testified that he opened the kit to check whether there were any liquid samples as a biohazard precaution. Defense counsel did not object to the admission of the rape kit into evidence. There was not enough DNA on LDR's vaginal swabs from the rape kit to test for contributors.

McManus also testified that while he was transporting Black to jail after arresting him, Black made repeated unprompted assertions that DNA evidence would exonerate him. McManus

obtained a warrant for the collection of DNA samples from Black's penis and underwear on the day of his arrest. Jennifer Hayden, the State's DNA expert, testified that it was 15 nonillion (15 followed by 30 zeros) times more likely the DNA mixture on Black's penis originated from Black, LDR, and an unknown third person than from Black and two unknown individuals. Hayden testified it was 22 nonillion times more likely the DNA mixture on the inside of Black's underwear originated from Black, LDR, and an unknown third person than from Black and two unknown individuals.

Black's sole witness, Dr. Monty Miller, testified that the amount of LDR's DNA on Black's penis indicated strong friction or pressure and "multiple passes" across the surface. *Id.* at 178. Dr. Miller testified that conditions such as Black sleeping naked in LDR's bed could have resulted in that amount of DNA transfer without requiring sexual contact. Black did not argue that he had slept naked in LDR's bed.

The trial court found Black guilty of all charges and entered findings of fact and conclusions of law, in which the court found LDR to be credible. Black moved for reconsideration, arguing insufficiency of the evidence for all charges except one count of first degree incest. The trial court denied the motion.

D.    Sentencing

At sentencing, the trial court found that Black was indigent as defined in RCW 10.101.010(3)(a)-(c) and signed an order of indigency for purposes of appeal. The trial court also imposed community custody conditions, including that Black "shall have no [I]nternet access" and must "[p]ay supervision fees as determined by [Department of Corrections]." Clerk's Papers at

135. The only other legal financial obligation (LFO) the trial court imposed was the mandatory $500 victim assessment. Black's judgment and sentence was entered in February 2020.

Black appeals and he has filed a SAG. His direct appeal has been consolidated with a timely pro se PRP.

ANALYSIS

I. DIRECT APPEAL AND SAG

A.     Motion to Sever

Black argues the trial court violated his constitutional right to be tried in the county where the offenses were alleged to have occurred when it denied his motion to sever and change venue for the four Snohomish County offenses. The State concedes the failure to order a change of venue for the Snohomish County charges constituted a violation of article I, section 22 of the Washington Constitution and asks that we remand for dismissal without prejudice.

The Washington Constitution guarantees defendants the right to "a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." WASH. CONST. art. I, § 22. CrR 5.1(a) provides, "All actions shall be commenced: (1) In the county where the offense was committed; [or] (2) [i]n any county wherein an element of the offense was committed or occurred."

A trial court's decision regarding a motion to change venue is reviewed for abuse of discretion, which occurs when a decision is manifestly unreasonable or based on untenable grounds. *State v. Stearman*, 187 Wn. App. 257, 264-65, 348 P.3d 394 (2015). A trial court may rely on the State's offer of proof to determine whether an element of each offense occurred in the charging county in compliance with CrR 5.1(a). *Id*. at 265.

7

The remedy for constitutional error is a new trial unless the error was harmless beyond a reasonable doubt. *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). And where *no* facts establish venue in the county of conviction, "this error cannot be harmless." *Stearman*, 187 Wn. App. at 272. Otherwise the constitutional right loses all force. *Id.*

Here, the State made no offer of proof attempting to establish that the four Snohomish County counts occurred in Grays Harbor County. At trial, the State never sought to prove that counts 1, 2, 5, or 7 occurred in Grays Harbor County, and LDR's testimony confirmed that any offenses from that time period occurred in Snohomish County.

On appeal, the State concedes, "[T]here is no doubt that the crimes charged in counts 1, 2, 5 and 7 occurred entirely in Snohomish County, Washington; none of the elements occurred in any other county." Br. of Resp't at 10-11.[1] Because no facts established that counts 1, 2, 5, and 7 occurred in Grays Harbor County, the refusal to sever and transfer venue was an error that cannot be harmless. *See Stearman*, 187 Wn. App. at 272. We accept the State's concession, reverse Black's convictions on counts 1, 2, 5, and 7, and remand for the trial court to dismiss these counts without prejudice and resentence Black accordingly.

B.     Community Custody Conditions and LFOs

    1.     Internet use prohibition

Black argues the community custody condition ordering that he "'shall have no [I]nternet access'" is not crime related and is overbroad in violation of the First Amendment to the United States Constitution. Br. of Appellant at 12. The State concedes that the condition is not crime

---

[1] Although the State argued below that Black had waived any venue challenge by not raising it earlier, the State does not argue waiver on appeal.

related in this case but asks this court to hold that restrictions on Internet access may be imposed as part of sex offender treatment.

The trial court can only impose community custody conditions authorized by statute. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). A trial court may impose crime-related prohibitions as part of a term of community custody. RCW 9.94B.050(5)(e). In *State v. O'Cain*, Division One remanded for the trial court to strike an Internet use prohibition because there was no evidence that the defendant accessed the Internet before committing his crime or that Internet use contributed in any way to his crime, and the trial court made no finding that Internet use contributed to the rape. 144 Wn. App. 772, 775, 184 P.3d 1262 (2008). Much like *O'Cain*, there is no evidence in this case that the Internet contributed in any way to Black's abuse of LDR, and the trial court made no such finding. Because the Internet use prohibition is not crime related, the trial court must not include this provision upon resentencing. We decline the State's request that we order the trial court to adopt a different condition requiring compliance with sex offender treatment. On remand, the State can request that the trial court impose, pursuant to RCW 9.94A.703(3)(c) and (d), a condition requiring Black to participate in crime-related treatment and follow all recommendations of the treatment provider.

2.      Community custody supervision fee

Black argues that the trial court erred in imposing the costs of community custody supervision in his judgment and sentence because Black is indigent, the supervision fees are discretionary, and the trial court conducted no individualized inquiry into Black's ability to pay. The State argues that the supervision fees are not costs under RCW 10.01.160 and that the trial court did not err by imposing them.

RCW 10.01.160(3) provides, "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." This court recently held that the supervision fee is not a "cost" as defined in RCW 10.01.160, but trial courts nevertheless have discretion to waive the fee under RCW 9.94A.703(2)(d). *State v. Spaulding*, 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020). In *Spaulding*, the court imposed only the mandatory victim assessment, struck all other discretionary fees, but without comment did not strike the supervision fee. *Id*. at 531. We encouraged the trial court to reevaluate the supervision fee on remand. *Id*. at 537.

Here, the trial court found that Black was indigent. Much like *Spaulding*, the trial court did not impose any discretionary LFOs, but also did not comment on the community custody supervision fee, which is boilerplate language in the judgment and sentence. Because we are remanding for resentencing, on remand, the trial court may revisit the imposition of the community custody supervision fees.

C.    SAG Issues

In addition to the venue issue, Black alleges a chain of custody violation when McManus opened the rape kit "for unjustifiable reasons." Reply to Resp't at 1. "The trial court is necessarily vested with a wide latitude of discretion in determining admissibility, which will not be disturbed absent clear abuse." *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984).

McManus testified that he opened the rape kit to check for the presence of liquid samples before sending it to the crime lab because of biohazard concerns. Defense counsel did not object to the admission of the rape kit as an exhibit or to testimony about the resulting DNA tests. Additionally, there was insufficient DNA in LDR's vaginal swabs to identify contributors—the

10

inculpatory DNA was collected from Black's penis and underwear. Defense counsel did not object, there is no evidence of tampering besides Black's posttrial assertion, and there is no apparent prejudice to Black given that there was insufficient DNA to test for contributors. Thus, the trial court did not abuse its discretion by admitting the rape kit into evidence.

## II. PRP

### A.     Ineffective Assistance of Counsel

In his pro se PRP, Black argues that his first trial counsel conspired with the prosecutor by not moving to sever the Snohomish County charges, failed to interview witnesses, did not appropriately investigate the State's DNA evidence, and stole public funds because money for a private investigator was approved but one was never hired. He argues that his second trial counsel failed to secure a second opinion regarding the DNA evidence, did not call or question "my witnesses," and failed to object to the admission of the rape kit evidence. PRP at 10. We disagree.

A petitioner must provide this court with evidence to support their factual allegations. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). "Bald assertions and conclusory allegations" will not suffice; Black "must state with particularity facts which, if proven, would entitle him to relief." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). "If the petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate . . . competent, admissible evidence to establish the facts that entitle [them] to relief." *Id*.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel to criminal defendants. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective

11

assistance of counsel, Black must show (1) defense counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls "'below an objective standard of reasonableness'" in light of "'all the circumstances.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). Prejudice ensues if there is "a reasonable probability" the result of the proceeding would have been different had counsel not performed deficiently. *Id.* Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end this court's inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

We strongly presume defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). To overcome this presumption, Black must show "'the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Id.* (quoting *McFarland*, 127 Wn.2d at 336). Decisions on whether and when to object are a "classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

To the extent that Black alleges ineffective assistance against his first attorney for the failure to seek a change of venue, this issue is moot given our resolution of the venue issue in his direct appeal. With regard to the alleged failure to interview witnesses, Black provides no evidence regarding additional witnesses that Black wanted either of his attorneys to interview or call. He offers no further information on who these witnesses were or what they would have testified about. Similarly, Black does not produce any evidence indicating whether or why a private investigator was or was not employed. It is the petitioner's burden to provide evidence to support the petition and this court will not rely on mere speculation. *Yates*, 177 Wn.2d at 18; *Rice*, 118 Wn.2d at 886.

12

To the extent that Black alleges ineffective assistance from his second attorney's failure to object to the admission of the rape kit because McManus opened the kit to check for biohazard material before sending it to the crime laboratory, it is not apparent what objection counsel should have lodged. The decision not to object was well within the realm of trial tactics. *Madison*, 53 Wn. App. at 763. Finally, defense counsel did secure a second opinion of the State's DNA evidence, hiring Dr. Miller, who testified at trial. The fact that defense counsel was not able to secure an expert willing to testify that the DNA results were unreliable does not constitute deficient performance.

We hold Black has failed to establish that his two attorneys performed deficiently. Therefore, we need not reach the question of prejudice.

B.        Sufficiency of the Evidence

Black argues LDR's testimony was too vague to constitute sufficient evidence to convict him of any charges.[2] We disagree.

The test for determining sufficiency of evidence is whether, viewing the evidence in a light most favorable to the State, any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt. *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). This court resolves all reasonable inferences based on the evidence in favor of the State and interprets inferences most strongly against the defendant. *Id.* at 821-22. The State's evidence is admitted as true, and circumstantial evidence is considered equally reliable as direct evidence. *State v. Scanlan*,

---

[2] In this portion of his PRP, Black also argues that "the prosecutor was vindictive" and asserts the prosecutor and defense counsel "lied in open court" about the testing of the DNA evidence. PRP at 20. A PRP must contain a statement of "evidence available to support the factual allegations" therein. RAP 16.7(a)(2). Black offers no evidence or argument to substantiate these claims.

193 Wn.2d 753, 770, 445 P.3d 960 (2019). And we defer to the fact finder's resolution of conflicting testimony and their evaluation of the evidence's persuasiveness. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

First degree rape of a child requires sexual intercourse with a person who is less than 12 years old when the defendant is at least 24 months older than the victim. RCW 9A.44.073(1). First degree child molestation requires the defendant to have, or knowingly cause someone under the age of 18 to have, sexual contact with a victim who is less than 12 years old, when the defendant is at least 36 months older than the victim. RCW 9A.44.083(1). Sexual intercourse requires penetration; "'[s]exual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Third degree rape of a child requires intercourse with a victim who is between 14 and 16 years old when the defendant is at least 48 months older than the victim. RCW 9A.44.079(1). Third degree child molestation requires the defendant to have, or knowingly cause someone under the age of 18 to have, sexual contact with a victim who is between 14 and 16 years old when the defendant is at least 48 months older than the victim. RCW 9A.44.089(1). First degree incest requires intercourse with a person who the defendant knows they are related to, and second degree incest requires sexual contact with a person who the defendant knows they are related to. RCW 9A.64.020(1)(a), (2)(a). Stepparents and stepchildren are relatives under the incest statute. RCW 9A.64.020(3)(a).

Black was LDR's stepfather and there is no dispute that he was at least 48 months older than LDR. The trial court found that LDR was a credible witness. LDR's testimony about the abuse, which covered the time span from when the family moved to Washington when she was

approximately 10 years old to when they moved to California when she was approximately 12 years old supported the first degree rape of a child, first degree child molestation, and first and second degree incest charges for that time period. LDR's testimony about the abuse also covered the time from when the family returned to Washington up to her 16th birthday and supported the first and second degree incest, third degree rape of a child, and third degree child molestation charges for that time period. DNA evidence, as well as Rowe and LDR's testimony, supported the incest charges from the February 2019 incident. Black's witness, Dr. Miller, proposed the theory that LDR's DNA could have been on Black's penis if Black had slept in her bed naked, which nobody suggested he did. Dr. Miller acknowledged that, otherwise, strong friction and "multiple passes," for example with LDR's hand, would have been necessary to leave behind so much DNA. VRP (Dec. 19, 2019) at 178.

Taking the State's evidence as true, a rational trier of fact could find Black guilty beyond a reasonable doubt of first degree rape of a child and first degree child molestation for the time period before LDR turned 12, third degree rape of a child and third degree child molestation when LDR was between 14 and 16 years old, and first and second degree incest for the February 2019 incident and other instances of sexual intercourse and contact after Black became LDR's stepfather.

We hold that sufficient evidence supported Black's convictions.

C.    Other PRP Issues

In addition to the chain of custody and venue issues also raised in his direct appeal and SAG, Black raises several additional arguments in his reply to the State's response to his PRP. Black argues that his right to due process was violated because Rowe opened the letters he sent to

her home and gave them to the police, that his right to confrontation was violated because he was not allowed to personally question LDR, and that his convictions for first and second degree incest for the time period after LDR's 16th birthday are based on the same facts and violate double jeopardy.

RAP 10.3 governs the content, format, and length of briefs for PRPs as well as traditional appellate briefs. RAP 16.10(d). RAP 10.3(c) provides that a reply brief should "be limited to a response to the issues in the brief to which the reply brief is directed." And this court has repeatedly declined to consider arguments raised for the first time in a reply brief. *See State v. Wilson*, 162 Wn. App. 409, 417 n.5, 253 P.3d 1143 (2011). We do the same here.

In sum, we deny Black's PRP.

CONCLUSION

We reverse and remand for the trial court to dismiss without prejudice counts 1, 2, 5, and 7 and resentence Black accordingly. Upon resentencing, the trial court must strike the Internet access prohibition and it may revisit the community custody supervision fee. We deny the PRP and otherwise affirm.

Nos. 54352-4-II and 55237-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Lee, C.J.

_____
Veljacic, J.

17